Southwest Center for Equal Justice
Gary Pearlmutter, AzSBN 014592
Wendy F. White, AzSBN 011352
Mailing:1124 Mountainaire Rd
Flagstaff, AZ 86005
(928) 525-9255
gary.pearlmutter@swcej.org
wendy.white@swcej.org
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tremayne Nez and Marcella Nez, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Flagstaff; an Arizona Municipality;<br>Clint Hill, in his individual and official capacities, and Tricia Hill, husband and wife;<br>Colton B. Hutchinson, in his individual and official capacities, and Jane Doe Hutchinson, husband and wife;<br>Dustin J. Eberhardt, in his individual and official capacities, and Jane Doe Eberhardt, husband and wife.<br><br>Defendants. | Case Number:<br><br><br>Complaint<br><br>(Jury Trial Demanded) |

Plaintiffs Tremayne Nez and Marcella Nez bring this Complaint for violations of civil rights pursuant to 42 U.S.C. §1983, and ancillary State law claims, against Defendants who are Arizona public entities and their employees and alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution and the Civil Rights Act pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution, wherein Plaintiff seeks to redress deprivations by named Defendants.  Jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343 and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

2. At all times mentioned herein, all defendants were acting under color of state law, depriving plaintiff of rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution and the laws of the United States. This court has supplemental jurisdiction over those claims asserted under state law by virtue of 28 U.S.C. §1367.

3. Venue is founded in this judicial district upon 28 U.S.C §1391 as the acts complained of arose in this district.

4. A jury trial is demanded.

**THE PARTIES**

5. Plaintiff Tremayne Nez (hereinafter "Plaintiff" or T. Nez) is a resident of the State of Arizona, County of Coconino and a citizen of the United States. Plaintiff was wrongfully identified as a criminal suspect on April 4, 2019, indicted on June 13, 2019 and wrongfully arrested and incarcerated on June 18, 2019 in connection

with a narcotics investigation by the Flagstaff Police Department called Operation Riptide.

6. Plaintiff Marcella Nez (hereafter "Plaintiff M. Nez" or "Marcella Nez") is a resident of the State of Arizona, County of Coconino and a citizen of the United States. Marcella Nez and Tremayne Nez were married at all times relevant hereto.

7. The Flagstaff Chief of Police is the final decision maker for the Defendant City of Flagstaff, an Arizona municipality, in all matters pertaining to law enforcement and is responsible for the overall supervision and training of police officers under its employ and the development of written policy.

8. Defendants Sergeant Clint Hill, Detective Colton B. Hutchinson and Detective Dustin B. J. Eberhardt (hereinafter "Defendant officers") were employed as police officers with the City of Flagstaff Police Department  acting under color of law and within the scope of their employment at all times relevant hereto. At all times relevant hereto, they were assigned to the Metro Street Crimes Task Force Narcotics Unit (hereinafter "Metro").

9. Metro is a multi-agency task force with the primary objective of interdiction of narcotics offenses and street crimes in the Flagstaff, Arizona area. The law enforcement and tactical operations of Metro are supervised and administered by the Flagstaff Police Department (hereafter "FPD").

**GENERAL ALLEGATIONS**

10. This action arises out of the sale of seven tabs of LSD on April 4, 2019 to a paid informant (hereafter "R.T.") working for Metro, from an unknown individual

named Trey. Immediately after the sale, Defendant Hill wrongly identified the drug dealer as Plaintiff, Tremayne Nez. Based on the mistaken identification, Plaintiff was subsequently indicted, arrested and incarcerated.

11. In or around September 2018 Metro commenced a narcotics investigation they called Operation Riptide. Defendant Hill was the supervisor for the Operation. Operation Riptide focused on multiple targets and sought to find and arrest persons dealing in drugs in the Flagstaff area. The Operation spanned approximately ten months culminating in the indictment and arrests of over forty individuals in June 2019.

12. Metro used several paid informants to set up drug transactions during Operation Riptide. One informant, R. T., had never worked for Metro or the FPD. Defendant Eberhardt was R.T.s handler.

13. On April 4, 2019, R.T. informed Defendant Eberhardt that he had set up a controlled drug buy to purchase LSD, an illegal drug, from a person named 'Trey'. R.T. said that he could buy the LSD from 'Trey' for $100. R.T. had never met 'Trey' in person and had only made contact with him via Snapchat and telephone.

14. The Defendant officers along with Metro officer Coconino County Deputy Chris Gregor met with R.T. ten minutes later at approximately 11:00 a.m.. R.T. informed them that the buy would occur in the parking lot for the apartment building at 3935 South Yaqui Drive, Flagstaff, Arizona. That building has six separate apartments each with a different number and letter designation. There

are multiple other apartment buildings in the complex and the parking lot is a common lot for several of them. It is located in the city of Flagstaff.

15. The Defendant officers and Deputy Gregor equipped R.T.'s truck with multiple audio and video recording devices at 11:16 am and activated them at 11:24 am.  They also provided $100 to R.T. to conduct the buy.

16. R.T. drove  to the parking lot for 3935 South Yaqui to meet with the dealer. The Defendant officers followed the informant in other vehicles to surveil the deal.

17. At 11:49 a.m., the dealer was waiting in the parking lot. He entered the informant's vehicle and sat in the front passenger seat.  The dealer was wearing a ball cap, but his face was fully visible. One of the surveillance videos had a clear and unobstructed full, frontal view of the dealer's face.

18. The informant introduced himself as Randy and the dealer introduced himself as Trey.  They chatted for several minutes about drugs and then after agreeing on the price, R.T. handed $100 to Trey and Trey gave him 7 tabs of LSD. Trey then got out of the truck and walked in a direction away from 3935 S. Yaqui. None of the surveilling officers followed Trey. None of them stopped him to conduct a field interview.

19. After the deal was completed, R.T. drove to a pre-determined location to meet with the Defendant Officers at 11:58 am.  Defendant Eberhardt took custody of the LSD and the multiple recordings of the transaction. R.T. was paid $150 for his participation.

The Mistaken Identification of Tremayne Nez

20. In controlled drug buys, where neither the Metro officers, nor the informant know the suspected dealer, Metro officers attempt to identify the suspect. The only Metro policy regarding the identification of an unknown suspect is to "*use all available resources to confirm the identity of the suspect*."

21. In April 2019, Defendant Hill was the officer responsible for conducting the investigation to identify unknown suspected dealers. He was the only Metro officer to conduct any investigation into the identity of 'Trey' in the criminal case at issue herein. In violation of FPD policy and accepted law enforcement standards, he did not prepare any written  report regarding his investigatory participation contemporaneously with the investigation. His only report was written on July 2, 2019, three months after the sale and a week after Hill found out that he had misidentified Plaintiff as the dealer.

22. According to Hill, in his attempt to identify 'Trey' he queried the Flagstaff Police Department I/LEADS database for the address 3935 S. Yaqui and the name 'Trey.'

23. I/LEADS is an acronym for 'Intergraph Law Enforcement Automated Data System'. It is an internal data management system used by the Flagstaff Police Department. Information regarding any contact with an identified person, whether criminal or not, can be entered into the database. The Flagstaff Police Department places no restrictions on the entry of data and no requirements regarding the maintenance or accuracy of the information in the database.

24. Hill discovered an entry showing that a 'Tremayne Nez' lived at 3935 South Yaqui.  He ignored the fact that the entry was for a non-criminal contact occurring almost six years earlier on December 3, 2013. Based solely on the out of date I/LEADS address information and the similarity of the first three letters of the dealer's name and those of Tremayne Nez, he jumped to the conclusion that 'Trey' was short for 'Tremayne' and that Plaintiff Tremayne Nez was the dealer from earlier in the day.

25. Hill knew that 'Nez' is a common last name amongst Navajo peoples. Rather than looking at the videos of the transaction, Hill claims that he asked  R.T. if the dealer was Native American and that R.T., who is also Navajo, confirmed that he was.

26. In order to further confirm his identification of the dealer, Hill used his cell phone to query the Arizona Department of Motor Vehicles ("MVD") record for 'Tremayne Nez'. He downloaded Plaintiff's  license photo to show to R.T.

27. Having already made up his mind that Plaintiff was the dealer named Trey, he ignored the rest of the information contained in the MVD records, including Plaintiff's current address. Had he simply looked at the information at his fingertips, he would have seen that Plaintiff's current address was 2548 West Clement Circle in Flagstaff and not 3935 South Yaqui.

28. According to Hill after obtaining the photograph he showed it to R.T. and asked him if that was the dealer.  Hill claimed that R.T. said that the person in the photograph was the dealer, "*but he has longer hair now*." In violation of FPD

policy and accepted law enforcement standards, Hill did not make any contemporaneous record of the identification process used with R.T., did not record the way in which the photo was presented or R.T.'s response.

29. FPD has a general policy for eye-witness identification that requires its officers to show at least six photographs to the eye-witness, when asking them to make an identification. Neither FPD general policies nor Metro specific policies contain any policy on photographic identification by paid informants in the context of controlled buys where neither the Metro officers, nor the informant know the suspected dealer. Showing a single photo, as done by Defendant Hill, does not comport with the FPD general photo identification process or any acceptable law enforcement photo identification procedure.

30. Neither Defendants Hill, Hutchinson and Eberhardt, nor any other officer reviewed the video tapes of the transaction and did not at any time prior to Plaintiff's indictment or arrest, compare the clear images of the dealer on those recordings with the photograph of the Plaintiff. Had they done so, they would have realized that the Plaintiff was not the suspected dealer.

31. Defendant Eberhardt prepared a departmental report regarding the April 4, 2019 sale of drugs by "Trey" to the informant. In violation of FPD policy and accepted law enforcement standards he did not prepare his report until April 23, 2019. In the report, Eberhardt stated that "Tremayne Nez" was "identified as the dealer using the law enforcement data base system".

32. Eberhardt's report did not include any other information regarding how the Defendant Officers made the identification, including the participation of the informant in the single photo identification procedure. It did not include the fact that the I/LEADS information was six years old or that the full name of the dealer was unknown to the informant. Defendant Eberhardt knew that his report would be relied upon by the prosecutor in making a criminal charging decision and knew that the prosecutor relies upon the accuracy and completeness of such reports.

33. On April 24, 2019 Defendant Hutchinson submitted a "Charging Request" to the Coconino County Attorney's Office to charge Plaintiff with the sale of the LSD.  The request was accompanied by the police report from Defendant Eberhardt.  Charging requests for all other Operation Riptide suspects were also provided to the County Attorney.

34. The County Attorney planned to present all Operation Riptide cases to the Grand Jury over several days in June 2019 . Each case was allotted 15 minutes for presentation. Defendant Hill designated which officer would testify on each case. He designated Metro officer Deputy Chris Gregor to be the testifying agent against Plaintiff.

35. Based upon the inaccurate, incomplete and misleading information in Defendant Eberhardt's report and the charging request, the Coconino County Attorney's Office presented the case against Plaintiff to a Coconino Grand Jury on June 13, 2019. The only evidence presented was the testimony of Deputy

Gregor. His testimony about the material facts took less than two minutes to present.   His specific testimony about the identification was less than 15 seconds.

36. Gregor testified that on April 4, 2019 Tremayne Nez sold acid to a confidential informant. He testified that "*Nez was positively identified through numerous law enforcement databases, as well as narcotic detectives working the investigation.*"   He provided no other testimony about the identification.   His testimony was incomplete, misleading, false and inaccurate.

37. Based solely on the testimony of Deputy Gregor, the Grand Jury returned an indictment against Plaintiff for one count of Sale of a Dangerous Drug.   The County Attorney requested the issuance of a warrant for Plaintiff's arrest and that bail be set at $35,000. Information submitted with the request for warrant indicated that Tremayne Nez had two addresses: 3935 South Yaqui Drive and the 2548 West Clement Circle.

The Arrest of Tremayne Nez

38. On June 17, 2019, the Flagstaff Police Department assembled several multi-agency teams to arrest the persons indicted in association with Operation Riptide. Each team received a list of several individuals to arrest the following day, along with an "Arrest Pack" providing information about each individual. Team 4, head by FPD Corporal Dustin Kuhns, was assigned to make the arrest of Plaintiff.

39. On June 18, 2019, Defendants Hill, Eberhardt, Hutchinson and/or Gregor advised Kuhns that Tremayne Nez "*was most likely staying at 3935 South Yaqui Drive in Apartment No. 28*".   Kuhns reported that he believed this information came from I/LEADS.

40. The arrest team arrived at 3935 South Yaqui Drive at approximately 9:15 a.m. on June 18, 2019. They found there was no Apartment No. 28, but there was an Apartment 2B.   They thought that No. 28 was mistakenly entered into I/LEADS and that it should have been No. 2B.  The team contacted the tenants of 2B and they did not know any 'Tremayne Nez'.  The team also attempted to contact the tenants of No. 2A but no one answered the door.

41. The team then reviewed the arrest pack for Tremayne Nez and saw that it listed an address that came from his Driver's License of 2548 West Clement Circle, a couple of miles from South Yaqui Drive.

42. At the same time, another member of the arrest team conducted an Arizona Driver's License inquiry for Tremayne Nez on the computer in his police cruiser. It too listed Plaintiff's current address as 2548 West Clement Circle.

43. The arrest team proceeded to 2548 West Clement Circle at approximately 9:45 a.m..  Plaintiff's brother-in-law and his young children answered the door and the brother-in-law confirmed that Plaintiff was home.

44. Having just gotten home from his job at the Flagstaff Medical Center, Plaintiff was asleep in his room. His brother-in-law called him downstairs where the team informed him that they had an arrest warrant for him. They showed him

his driver's license photograph and he confirmed that it was him. Plaintiff was placed under arrest with his hands cuffed behind his back.  His brother-in-law and two young nephews observed his arrest. His wife, Marcella Nez, was at work.

45. Another member of the arrest team, Arizona Department of Public Safety Sergeant David Ernst spoke with Plaintiff during the arrest.  Plaintiff asked what the warrant was about and was told it was for drug related crimes that he may have been involved in.  Plaintiff asked if he was sure that the warrant was for him.  Ernst responded that he did not have the details pertaining to the actual investigation, but explained that the warrant appeared to be valid.  Plaintiff also had a similar conversation with FPD Officer Pat Condon.  He appeared sympathetic to the Plaintiff.

46. Shortly after his arrest, Condon transported Plaintiff in his police cruiser to a waiting police van.  A van was being used because of the large number of arrests being simultaneously conducted. During the transport Condon permitted Plaintiff to call his wife at work to let her know that he had been arrested.

47. Plaintiff was held handcuffed in the windowless van along with others arrested in the sweep associated with Operation Riptide for several hours.  He received no additional information about the charges or reason for his arrest. He was unable to communicate with his family or ask for a lawyer.  At 12:22 p.m. on June 18, 2019, he was booked into the Coconino County jail and was subjected

to the standard booking procedures, including being photographed, fingerprinted, strip searched and placed in a holding cell. The strip searched involved the extremely invasive procedure of spreading his buttocks, so a detention officer at the jail could examine his anus and determine if he was concealing anything there.

48. This was the first time that Plaintiff had ever been accused of a crime or arrested and the first time he had ever been in a jail. Plaintiff comes from a tight knit religious family. His father is a highly respected and well known Navajo pastor who lives on the Navajo Nation.

49. On the morning of June 19, 2019, detention officers transported Plaintiff to the Coconino County Courthouse for his initial appearance in the Superior Court. There, a judge advised him of the charges and set a bond for $15,000. Upon his return to the jail, he was again strip searched.

50. That same day, Plaintiff Marcella Nez contacted several family members to raise the $15,000 for the bond. She was successful and posted the full amount of the bond. Plaintiff was released from the County jail at 7:09 p.m. June 19, 2019.

The Mistaken Identification of Tremayne Nez

51. In Defendant Hill's July 2, 2019 report, he attempted to justify his misidentification of Plaintiff as the drug dealer 'Trey'. He claimed that he first became aware that Plaintiff might not be 'Trey' from his wife Tricia Hill, who coincidentally was the Plaintiff's direct supervisor at the Flagstaff Medical

1   Center. Hill claimed that on June 20, 2019, Tricia told him that Plaintiff had

2   spoken with her about his arrest and told her that the police had the wrong

3   person.  Plaintiff did not learn until about a month later that Tricia Hill was the

4   wife of Defendant Clint Hill.

5   52. After hearing this from his wife, Hill, for the first time, decided to watch the video

6   recordings from the drug sale. He compared the video images of the dealer with

7   the Plaintiff's driver's license photograph that he had shown to the informant on

8   April 4th.  He claims that he noticed that the dealer in the video had longer hair

9   than Tremayne and a tooth abnormality on the upper right side not seen in

10   Tremayne's photograph.

11   53. He claimed that he next checked a Facebook picture of Plaintiff from January

12   2019 and saw he had short hair, similar to his driver's license photograph, and

13   did not see the tooth abnormality either.  He also noted that Plaintiff wore

14   glasses in the Facebook picture, but the dealer in the video image did not wear

15   glasses. He did not mention that Plaintiff's driver's license is restricted by the

16   need to wear glasses.

17   54. Hill next obtained the telephone number of the dealer from a screen shot

18   picture of the text message to the informant that had been placed into evidence

19   on the day of the sale. He checked I/LEADS for the number and did not find

20   any entry for it.

21   55. Hill stated in his report that he thought he had obtained the 3935 South Yaqui

22   address through that telephone number.  Hill further reported that he realized

1   that there was no correlation between the dealer's phone number and the

2   address while reviewing the evidence on June 20, 2019.

3   56. Hill then checked a database called Accurint. It is an online database service

4   provided by LexisNexis for law enforcement with a paid subscription. Upon

5   information and belief FPD subscribes to the Accurint service. In addition to

6   other information, Accurint contains the address history of individuals. On

7   checking Plaintiff's address history, Hill could see that Plaintiff's address as of

8   April 4, 2019 was either on E. Soliere or Clement Drive in Flagstaff, not on

9   South Yaqui Drive.  It showed that Plaintiff had not lived at 3935 South Yaqui

10   since 2016.

11   57. Hill again examined I/LEADS.  He reported that for the first time, he noticed

12   that the 3935 South Yaqui address for Plaintiff was from a 2013 non-criminal

13   contact with the Plaintiff. He also noticed for the first time that there was a

14   telephone number for Plaintiff in I/LEADS. He saw that the number did not

15   match the dealer's telephone number that they had collected in evidence on

16   April 4.

17   58. On June 21, 2019, Hill called Plaintiff and asked if he could speak with him.

18   Plaintiff agreed and he and Marcella went to the police station later that day to

19   meet with Hill.  Hill started the interview by telling Plaintiffs that he wanted to

20   speak to them about "*identity and stuff on [the police] computer system that*

21   *may or may not be accurate.*"

22

59. Plaintiff confirmed that in 2015 he lived in apartment No. 2A at 3935 South Yaqui.  At Hill's request, Plaintiff provided him with his cell phone number and his wife's cell phone number. Neither number matched that of the dealer.

60. Toward the end of the meeting, Hill confirmed that Plaintiff was not the 'Trey' who had sold drugs to R.T. on April 4th and that Plaintiff was innocent of any criminal wrongdoing. Hill then showed them a photograph on his cell phone of the dealer and said that "*I do not think it is you".*

61. Hill told Plaintiff that he would ask that the charges against him be dismissed. Hill contacted the County Attorney's office on June 25, 2019 to admit Metro's mistake and request that the charges against Plaintiff be dismissed.

62. The Coconino County Attorney's Office filed a motion to dismiss Plaintiff's charges without prejudice on June 25, 2019. The motion was granted on June 28, 2019. The Indictment charging Plaintiff with Sale of Dangerous Drugs is still visible to the general public on the Arizona Supreme Court Public Information website, as is the order dismissing the case 'without prejudice.' Any routine criminal history search of Plaintiff conducted in the future will reveal that Plaintiff was charged and arrested as a narcotics dealer.

The Identification of Trey Store as the Dealer

63. On June 24, 2019, before advising the County Attorney about Metro's mistaken identification of Plaintiff, Defendant Hill directed Defendants Hutchinson and Eberhardt to conduct surveillance on 3935 South Yaqui Drive to identify the true dealer.

64. They observed a young Native American man with an average build and long hair leaving Apartment 2A and followed him as he took a City bus to downtown Flagstaff. They requested a uniformed FPD Officer to conduct a "field contact" with the man.  Officer Roberts responded and contacted him. He obtained his name and address. His name was Trey Augustus Store and he lived at 3935 South Yaqui in Apartment 2A.

65. Defendants Hutchinson and Eberhardt then met with Officer Roberts to show him the video of the dealer from April 4, 2019.  After looking at the video, Roberts confirmed that the dealer in the video was the same person he had just identified as Trey Store.

66. Metro officers then asked the same informant used in the April 4 controlled buy to arrange another buy from Trey via Snapchat.  On June 26, 2019, the informant purchased LSD and Cocaine from Trey Store at Apartment No. 2A 3935 South Yaqui Drive.

67. Trey Store was arrested later that day and  subsequently indicted for both the June 26, 2019 and April 4, 2019 drug transactions.

Publication of Tremayne Nez's Arrest

68.  On June 18, 2019, the FPD prepared a written media release regarding the arrests made in connection with Operation Riptide. The media release was published online on the Department's official Facebook page and distributed to numerous media outlets.

69. Pursuant to Flagstaff Police Department Policy *"The ultimate authority and responsibility for the release of information to the media shall remain with the Chief of Police."*

70. The media release stated that 44 people had been indicted for the sale of illegal drugs. It stated that the persons arrested *"are linked to the trafficking of methamphetamine, heroin, marijuana, cocaine and acid within the community."* It identified Plaintiff as one of the persons arrested and that he was the subject of a Grand Jury Warrant for the Sale of Dangerous Drugs. His driver's license picture, with his name and age in the caption, was prominently displayed in the release. The information including the photograph of Plaintiff and the charges against him was published in numerous news outlets both in print and on-line.

71. On June 26, 2019 the Flagstaff Police Department issued the following update to the June18 Media Release.

*"Retraction and Correction: June 26, 2019- During the investigation of over 35 individuals who were selling drugs in the Flagstaff community and arrested on June 18, 2019, one individual was incorrectly identified as having sold drugs. That individual is Tremayne Nez. The Flagstaff Police Department wants to make it clear that Tremayne Nez did not sell drugs during operation Riptide and once the mistake was discovered the Department took action to ensure the charges were dismissed and that the correct individual has been identified and charges are pending against that*

1     *individual. The Department apologizes to Mr. Nez for the mistake and thanks*

2     *him for his cooperation during the investigation."*

3     The retraction included the picture of Plaintiff.

4     72. Despite the fact that Defendants Hill and the Chief of Police knew that Plaintiff

5         was misidentified as a drug dealer as of June 21, 2019, they did not notify the

6         Coconino County Attorney of the misidentification until June 25, 2019 and did

7         not publicly issue the retraction until June 26, 2019. Defendants purposefully

8         delayed releasing the public retraction in order to identify the actual April 4th

9         dealer, set up a second drug buy from him and effect his arrest.

10    73. On or about June 28, 2019, Defendants published a third media release in

11        which they attempted to explain how the misidentification happened. In the third

12        release Defendant Police Chief stated that the officers "*followed Flagstaff Police*

13        *Department policies with regard to their investigations and the use of informants*

14        *and they acted in good faith. However, we will be reviewing those policies to*

15        *determine if there are any other safeguards that can be put in place to prevent*

16        *anything like this to happen in the future."*

17    74. As a direct and proximate result of the actions and inactions of Defendants,

18        Plaintiff suffered emotional distress, loss of liberty, adverse consequences at

19        his place of employment, humiliation, anxiety, difficulty sleeping, loss of

20        reputation, and loss of privacy. Plaintiff sought professional counselling

21        because of the distress he experienced as well as faith based counselling

22        through his family. Because of the number of embarrassing inquiries, he

1    received on his Facebook page regarding his arrest he shut down that page.

2    His graduation from Northern Arizona University was delayed until December

3    2019, because he was unable to complete his final internship within the time

4    frame of the summer semester. Plaintiff's emotional distress and anxiety are

5    on-going.

## I. First Claim for Relief

4th and 14th Amendments Violations – 42 U.S.C. §1983 – Wrongful Arrest
Defendants Hill, Hutchinson and Eberhardt

8    75. Plaintiff incorporates the allegations contained in paragraphs 1 through 72, as

9    if set forth in full herein.

10   76. The Fourth and Fourteenth Amendments of the United States Constitution

11   protect persons from unreasonable seizure by police.   An arrest warrant

12   obtained by officers who do not have an objectively reasonable basis for making

13   a request for charges against a person violates the Constitution because it

14   creates an unnecessary risk of wrongful arrest.

15   77. Defendants Hill, Hutchinson and Eberhardt did not have an objectively

16   reasonable basis for seeking the indictment and arrest of Plaintiff because they

17   did not have probable cause to believe that Plaintiff had committed the offense

18   of sale of dangerous drugs.  Their investigation into the identity of the suspected

19   dealer failed to meet basic objectively reasonable investigative standards for

20   law enforcement. They failed to utilize available resources to identify the dealer;

21   they ignored clear evidence that Plaintiff was not the dealer; they used an

22   unduly suggestive photo identification procedure; they made assumptions

based on the mere fact that both the dealer and Plaintiff were young, Native American men; they ignored clear visual differences between the dealer and the photograph of Plaintiff; they relied on the conditional identification made by the informant rather than comparing the video images of the dealer with the photo of Plaintiff themselves.

78. Defendant officers knew and expected that the Coconino County Attorney and Grand Jury would rely upon the information provided by them about the identity of the suspected dealer in considering whether to issue an indictment and a warrant.

79. In requesting that Plaintiff be charged and arrested, Defendant officers failed to advise the prosecutor or the Grand Jury of the identification process used, failed to tell the prosecutor or the Grand jury that they relied on the informant to visually identify the dealer rather than their own observations and failed to tell the Grand Jury that the informant's identification was conditional. They falsely claimed that Plaintiff was positively identified as the dealer through "multiple databases" and by "metro officers."

80. The utter careless and cavalier attitude displayed by Defendants Hill, Eberhardt and Hutchinson in connection with the investigation of the identity of the April 4 dealer and their communication of the identification to the prosecutor and the Grand Jury was in complete and reckless disregard of Plaintiff's rights.

81. Because Defendant officers were without an objectively reasonable basis for seeking charges against Plaintiff, the arrest warrant issued was invalid and

Plaintiff's arrest on the warrant was a violation of his rights under the 4th and 14th amendments.

82. Plaintiff suffered damages, including loss of liberty, emotional distress, anxiety, humiliation and embarrassment as well as negative consequences at his place of employment, and the delay of his graduation from college.

**II. Second Claim for Relief**
14th Amendment Violation – 42 U.S.C. §1983
Due Process and Duty to Investigate
Defendants Hill, Hutchinson and Eberhardt

83. Plaintiff Nez incorporates the allegations contained in paragraphs 1 through 80, as if set forth in full herein.

84. An individual has a liberty interest under the Due Process clause of the 14th Amendment. Incarceration on a warrant without a reasonable investigation of identity, when the circumstances demand it, is subject to review under the Due Process Clause.

85. Police officers who intentionally, knowingly or with reckless disregard for the truth, fail to undertake a reasonable investigation into the identify of a criminal suspect, when there is more than adequate time to do so, or make false statements or omit material evidence in a request to prosecute and indict violate the Due Process clause of the 14th Amendment.

86. Defendant officers intentionally, knowingly or with reckless disregard for the truth failed to undertake any reasonable investigation into the identity of the dealer in the April 4th controlled drug buy. There was more than adequate time

to conduct such an investigation and, when Defendant Hill finally did investigate the dealer's identity after Plaintiff was arrested, needed only a few hours to realize his mistake.

87. Defendant officers prepared only a single report and request for charging to the Coconino County Attorney that wrongly identified the Plaintiff as the dealer, and contained false and misleading information and omitted material evidence. The County Attorney relied upon the false, misleading and incomplete report to present the case to the Coconino County Grand Jury and on the false, misleading and incomplete testimony of the assigned Metro officer, Gregor.

88. The conduct of the officers was the direct and proximate cause of Plaintiff's wrongful arrest and consequential damages.

### III. Third Claim for Relief
4TH and 14TH Amendment Violation – 42 U.S.C. §1983
Monell Liability – Failure to Train or Supervise
Defendant City of Flagstaff

89. Plaintiff incorporates the allegations contained in paragraphs 1 through 86, as if set forth in full herein.

90. The Chief of Police is aware of the importance of training and supervision in the administration of the Flagstaff Police Department and the need for comprehensive policies for its law enforcement operations and criminal investigations.   The Chief of Police has assembled a detailed manual of written policies that is over 800 pages.   Policy 100 states that the purpose of the

manual *"is to affirm the authority of members of the Flagstaff Police Department to perform their function based on established legal authority"*.  The Chief of Police also assembled the manual of written policies for the Metro unit.

91. Despite the fact that the Department has written policies regarding criminal investigations, which include eyewitness identification and a requirement to utilize all available resources to confirm a suspect's identity, Defendants Hill, Hutchinson and Eberhardt failed to follow them.

92. Upon information and belief, the failure of the Defendants Hill, Hutchinson and Eberhardt was the direct result of the failure by the Chief of Police to adequately train or supervise its police officers, including Hill, Hutchinson and Eberhardt, thereby failing to adequately prevent constitutional violations by them.

93. The Chief of Police knew that a failure to train or supervise its officers on the proper investigative procedures for identifying a suspect would likely result in the arrest of innocent persons.

94. The failure to properly train and supervise officers, including Hill, Hutchinson and Eberhardt, in accordance with internal policy and with standard police investigative practices, demonstrates a deliberate indifference by the Flagstaff Police Department to the constitutional rights of persons who come in contact with its officers and was the cause of the constitutional violation that occurred to Plaintiff.

**IV. Fourth Claim for Relief**
4TH and 14TH Amendment Violation – 42 U.S.C. §1983

Monell Liability – Lack of Policy
City of Flagstaff

95. Plaintiff incorporates the allegations contained in paragraphs 1 through 92, as if set forth in full herein.

96.  The Chief of Police failed to provide a clear and comprehensive policy for Metro Officers to follow in identifying suspects in drug sales.  The Flagstaff Police Departments lacks any policy for identification of unknown suspects by paid informants,.  Additionally, while Metro policy requires officers to "*Utilize all available resources to confirm the suspects identity*", it lacks sufficient guidance on what available resources to use.  Furthermore, while the Flagstaff Police Department uses I/LEADS as a primary tool for identification, FPD lacks a policy on the maintenance and accuracy of that database, including the quality and type of information that may be entered in the system, purging out-of-date or incorrect information and procedures for the overall utilization of I/LEADS data.

97. The lack of policies, customs or practices for identification of suspects and the lack of policies regarding the limitations of and appropriate use and maintenance of I/LEADS demonstrates a deliberate indifference by the Defendant City to the constitutional rights of Plaintiff which was the direct and proximate cause of the violation of Plaintiff's constitutional rights.

**V. Fifth Claim for Relief**
4TH and 14TH Amendment Violations – 42 U.S.C. §1983

Monell Liability – Ratification
City of Flagstaff

98. Plaintiff T. Nez incorporates the allegations contained in paragraphs 1 through 95, as if set forth in full herein.

99. Ratification occurs when a person with final decision making authority approves the actions of a subordinate and the basis for them and that act of ratification is chargeable to the municipality under Monell.

100. The Chief of Police issued a media release on Facebook dated June 28, 2019 about the identification and arrest of the Plaintiff.  In the release, the Chief stated, "*Officers in this case followed Flagstaff Police Department policies with regard to their investigation and use of informants and they acted in good faith.*" This statement is a ratification by the Chief of Police of the unconstitutional actions of Defendants Hill, Hutchinson and Eberhardt's investigation and the reasons for them.

101. The Defendant City is liable under Monell for the violation of Plaintiff's constitutional rights committed by Defendant officers that resulted in the wrongful arrest of Plaintiff and his consequential damages.

**VI. Claim for Relief**
False Arrest/False Imprisonment
Defendants Hill, Hutchinson and Eberhardt

102. Plaintiff incorporates the allegations contained in paragraphs 1 through 99 as if set forth in full herein.

103. Defendants Hill, Hutchinson and Eberhardt failure to reasonably investigate the identification of the dealer resulted in the misidentification of Plaintiff.  The arrest warrant for Plaintiff was obtained through the presentation of false, misleading and incomplete information by Defendant officers to the prosecutor and Grand Jury. Plaintiff was subsequently arrested without lawful authority and without his consent.

104. Defendants are liable under Arizona common law for the common law torts of false arrest and false imprisonment of Plaintiff.

### VII. Claim for Relief
Instigating or Participating in False Imprisonment
Defendants Hill, Hutchinson and Eberhardt

105. Plaintiff incorporates the allegations contained in paragraphs 1 through 102, as if set forth in full herein.

106. Plaintiff was indicted and subsequently arrested and incarcerated at the express request of Defendant officers. Defendant officers did not have probable cause to believe that Plaintiff had committed a crime and their request that he be arrested and incarcerated was unlawful and a violation of his constitutional rights.

107. Although Defendant officers were not present at his arrest, their charging request was the direct and proximate cause of his imprisonment commencing on June 18, 2019 at approximately 9:45 a.m. Defendants are liable under Arizona common law for instigating or participating in the false arrest and false imprisonment of Plaintiff and for the consequential damages caused thereby.

## VIII. Claim for Relief
Gross Negligence in Police Investigation
Defendants Hill, Hutchinson and Eberhardt

108. Plaintiff incorporates the allegations contained in paragraphs 1 through 105, as if set forth in full herein.

109. The conduct of Defendants Hill, Hutchinson and Eberhardt was outside the duty and standard of care required of them, in that they had reason to believe that their identification of the plaintiff was incorrect, they recklessly and with gross negligence failed to follow written policies of their department and unit, they recklessly and with gross negligence failed to utilize available resources to confirm the dealer's identify from the sale on April 4, 2019, including but not limited to viewing the videos of the transaction, conducting surveillance on the suspected dealer after he left the informant's truck and on the suspected residence of the dealer, examining databases for current addresses of the Plaintiff, failing to utilize the information from the informant regarding the Snapchat and telephone contacts he had with the dealer to identify him.

110. They were also aware of the grave consequences of the photo identification procedure utilized with the informant. It was not in accordance with Departmental policies or acceptable law enforcement standards and was so unduly suggestive that it was likely to, and did, result in the misidentification of Plaintiff as a narcotics dealer. They should have utilized an array of photographs of persons that resembled the actual dealer or should have utilized

their own eyes to compare the video images of the dealer with the photograph of Plaintiff.

111. As a result of their recklessness and gross negligence, Plaintiff was arrested, defamed and caused to suffer emotional distress and other harms.

112. Defendants are liable under Arizona common law for gross negligence.

**IX. Claim for Relief**
Respondeat Superior
Defendant City of Flagstaff

113. Plaintiff incorporates the allegations contained in paragraphs 1 through 110, as if set forth in full herein.

114. Defendants Hill, Hutchinson and Eberhardt were employees of the City of Flagstaff, when they committed the torts acting within the scope of their employment.  The City of Flagstaff is responsible for their torts of False Arrest, Instigating False Imprisonment and Gross Negligence in Police Investigation under the legal principle of respondeat superior.

**X. Claim for Relief**
False Light Invasion of Privacy
Defendant City of Flagstaff

115. Plaintiff incorporates the allegations contained in paragraphs 1 through 112, as set forth in full herein.

116. After the arrest of Plaintiff, the Defendant City through its Chief of Police negligently and recklessly wrote and published false information in media releases and other statements that the plaintiff had sold LSD (an illegal drug) to an informant.

117. The June 18, 2019 public media release written at the direction of the Police Chief created the false impression that Plaintiff was a drug dealer and was connected with other drug dealers in the Flagstaff area. The false impression created by the Defendant City would be highly offensive to a reasonable person and was offensive to Plaintiff.

118. The Defendant City through its Chief of Police acted negligently and recklessly about whether the statement would create a false impression about the Plaintiff. The publication caused emotional distress, loss of reputation and other damages to Plaintiff and the Defendant City is directly liable to Plaintiff under the common law tort of False Light Invasion of Privacy.

**XI. Claim for Relief**
Defamation
Defendant City of Flagstaff

119. Plaintiff incorporates the allegations contained in paragraphs 1 through 116, as set forth in full herein.

120. After Plaintiff's arrest, Defendant City through its Chief of Police, wrote and published a defamatory statement in the June 19, 2019 "Operation Riptide" media release that Plaintiff was '*linked to the trafficking of methamphetamine, heroin, marijuana, cocaine, and acid within the community*." The statement also specifically indicated that Plaintiff had sold dangerous drugs.  The statement included no caveat or reminder that he or any of the other Operation Riptide suspects were innocent until proven guilty, instead presenting the information as an unconditional statement of fact.

121. The statements that Plaintiff was a drug dealer were false. The statement was reiterated by numerous news outlets.

122. At the time the statement was made, the Defendant City acting through its Police Chiefs acted with reckless disregard for the truth or falsity of the statement or was negligent in determining the truth or falsity of the statement.

123. The Defendants' statement caused damages to Plaintiff, including damage to his reputation, embarrassment, humiliation, anxiety, inconvenience and emotional distress. The damages caused to Plaintiff by the publication of the false statements are in addition to the damages caused by Plaintiff's false arrest alone and would not have occurred but for the publication of the false statements regarding Plaintiff.

**XII. Claim for Relief**
Loss of Consortium-Plaintiff Marcella Nez
Defendant City of Flagstaff

124. Plaintiff Marcella Nez incorporates the allegations contained in paragraphs 1 through 121, as set forth in full herein.

125. As a result of the emotional distress and consequential damages to Plaintiff from his wrongful arrest and the defamatory statements made about him by the Defendants, Plaintiff's relationship with his wife Plaintiff Marcella Nez was damaged and she was deprived of the emotionally unencumbered love, comfort and care of her husband.

126. Plaintiff Marcella Nez is entitled to the damages caused to her relationship with Plaintiff and to the loss of consortium she suffered as a result of the torts committed against Plaintiff.

Damages

127. Plaintiff has suffered damages as a result of the unconstitutional and tortious conduct of defendants, including emotional distress, loss of liberty, anxiety, embarrassment, damage to reputation and physical discomfort and pain.

128. Defendant officers' gross carelessness and callous indifference in the investigation into the identification of the April 4th dealer, which led them to falsely accuse Plaintiff Tremayne Nez of being a narcotics trafficker, thereby violating his federally protected constitutional rights, renders them liable to Plaintiff for punitive damages pursuant to 42 USC §1983.

Prayer for Relief

Wherefore, Plaintiff respectfully requests this Court to:

A.  Enter judgment in favor of Plaintiff and against all defendants on all claims;

B.  Award Plaintiff compensatory damages against all defendants in the aggregate amount of $350,000 or such other amount as is determined at trial;

C.  Award Plaintiff punitive damages against Defendants Hill, Hutchinson and Eberhardt pursuant to 42 USC §1983 in an amount to be determined at trial;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988 and any other applicable provision of the law;

E. Award Plaintiff costs and pre and post judgment interest pursuant to A.R.S.§12-823;

F. Award Plaintiff Marcella Nez for the loss of consortium in the amount to be determined at trial;

G. Enter appropriate orders directing the Flagstaff Police Department to remove and correct any false information regarding plaintiff published in any electronic database or elsewhere.

H. Award Plaintiffs such other and further relief as the Court may deem just and proper.

Southwest Center for Equal Justice

/s/ Gary Pearlmutter

Attorney for Plaintiff