1  Michele Molinario, Bar #020594
   Joseph E. Leverence, Bar #033199
2  JONES, SKELTON & HOCHULI, P.L.C.
   40 North Central Avenue, Suite 2700
3  Phoenix, Arizona  85004
   Telephone:  (602) 263-1700
4  Fax:  (602) 200-7831
   mmolinario@jshfirm.com
5  jleverence@jshfirm.com

6  Attorneys for Defendants City of Flagstaff,
   Clint Hill and Tricia Hill, Colton B.
7  Hutchinson and Dustin J. Eberhardt

8                  **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF ARIZONA**

10 Tremayne Nez and Marcella Nez,            NO. 3:20-cv-08146-DLR-CDB
   husband and wife,
11                                           **DEFENDANTS' MOTION TO**
                              Plaintiffs,    **DISMISS**
12
13          v.

14 The City of Flagstaff; an Arizona
   Municipality; Clint Hill, in his individual and
15 official capacities, and Tricia Hill, husband
   and wife; Colton B. Hutchinson, in his
16 individual and official capacities, and Jane Doe
   Hutchinson, husband and wife; Dustin J.
17 Eberhardt, in his individual and official
   capacities, and Jane Doe
18 Eberhardt, husband and wife,

19                              Defendants.

20 ///
   ///
21 ///
   ///
22 ///
   ///
23 ///
   ///
24 ///
   ///
25 ///
   ///
26 ///
   ///
27 ///
   ///
28

   8886752.1

Defendants City of Flagstaff ("Defendant City"), Clint Hill, Colton Hutchinson and Dustin Eberhardt ("Detective Defendants") and Tricia Hill, by and through undersigned counsel, hereby move this Court to dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). While it is now clear that a confidential informant mistakenly identified Plaintiff Tremayne Nez ("Plaintiff Nez") as a drug dealer, it is equally clear that the events leading up to the arrest do not impute any liability on the Defendants. Indeed, none of Plaintiffs' causes of action state a claim for which relief could be granted. As such, Defendants move to dismiss the entire Complaint, including every claim therein, at this time.

## I.    CERTIFICATION OF CONSULTATION

On September 23, 2020 counsel for Defendant, Joseph Leverence and Michele Molinario, sent a letter of consultation to Plaintiffs' counsel, Gary Pearlmutter, discussing the bases for a potential motion to dismiss, thereby consulting in good faith. Upon consideration, Mr. Pearlmutter and Mr. Leverence spoke telephonically. The parties were unable to reach a resolution, and, accordingly, this Motion is being filed.

## II.   FACTUAL BACKGROUND[1]

### A.    The Initial Drug Deal and Identification

Detective Defendants, employees of the City of Flagstaff Police Department ("FPD"), were also members of the multi-agency METRO Street Crimes Task Force ("METRO"). [Doc. 1 at ¶¶ 8-9.] From September, 2018 through June, 2019, the METRO unit participated in Operation Riptide – an operation focused on finding and arresting persons dealing drugs in the Flagstaff area. [*See id.* at ¶ 11.] On April 4, 2019, Defendant Eberhardt received information from a confidential informant (the "CI") that they received an offer to purchase $100 worth of lysergic acid diethylamide ("LSD") from a drug dealer named "Trey." [*Id.* at ¶¶ 12-13.] The CI agreed to meet the drug dealer at an apartment parking lot located at 3935 South Yaqui. [*See id.* at ¶ 14.] The Detective Defendants met with the CI to gather additional

---

[1] For purposes of this motion only are the facts alleged in Plaintiffs' Complaint taken as true. Defendants do not concede to the truth of all allegations and indeed preserve the right refute the allegations.

information about the potential drug deal and provide him with the money necessary to conduct the transaction. [*Id.* at ¶ 14-15.] The CI drove to the agreed-upon location to meet Trey and subsequently purchased seven tabs of LSD from him for $100. [*Id.* at ¶¶ 16-18.] Plaintiffs allege that Trey sat the vehicle's front passenger seat during the drug deal while the CI was in the driver's seat. [*See id.* at ¶¶ 16-17.] Plaintiffs alleged that Trey and the CI conversed while seated next to each other for "several minutes." [*Id.* at ¶¶ 17-18.]

Following the completion of the LSD sale, the CI met with the Detective Defendants and subsequently turned over the purchased drugs and recordings. [*Id.* at ¶ 19.] At this point, Defendant Clint Hill ("Defendant Clint") searched the FPD's I/LEADS database, an internal data management system utilized by FPD, to find any "Trey" associated with 3935 South Yaqui, the address where the drug deal took place. [*Id.* at ¶¶ 22-23.] The I/LEADS search populated an entry for a "Tremayne Nez." [*Id.* at ¶ 24.] That entry showed that Tremayne Nez had been previously documented as living at 3935 South Yaqui. [*Id.*] Plaintiffs allege that Defendant Clint then used his cell phone to "query the Arizona Department of Motor Vehicles record" for purposes of retrieving a driver's license picture for Tremayne Nez. [*Id.* at ¶ 26.] Defendant Clint showed this picture to the CI. [*Id.* at ¶ 28.] According to Plaintiff, the CI identified the person in the picture as the person who sold him the LSD, but did note that the drug dealer "has longer hair now."[*Id.*]

**B.      Plaintiff Nez's Indictment and Arrest for Sale of Dangerous Drugs**

Defendant Eberhardt later prepared a departmental report regarding the sale of drugs. [*Id.* at ¶ 31.] Within that report, Defendant Eberhardt stated that "Tremayne Nez… was identified as the dealer using the law enforcement data base system." [*Id.*] Less than three weeks later, a charging request was submitted to the Coconino County Attorney's Office ("CCAO") by Defendant Hutchinson. [*Id.* at ¶ 33.] A copy of Defendant Eberhardt's departmental report was attached to the charging request. [*Id.*] The CCAO presented the case to the Grand Jury and Plaintiff Nez was indicted for Sale of Dangerous Drugs on June 13, 2019. [*See id.* at ¶¶ 34-37.] Plaintiff Nez claims that Defendants Hill, Hutchinson, and Eberhardt:

1
2
3
4

> failed to advise the prosecutor or the Grand Jury of the identification process used, failed to tell the prosecutor or the Grand jury [sic] that they relied on the informant to visually identify the dealer rather than their own observations and failed to tell the Grand Jury that the informant's identification was conditional They falsely claimed that Plaintiff was positively identified as the dealer through "multiple databases" and by "metro officers.["]²

5
6
7
8

[*Id.* at ¶ 79.] Plaintiffs also allege that Deputy Chris Gregor [not employed by the City of Flagstaff], another agency's METRO task force member, was the only person whom provided testimony at the hearing. [*Id.* at ¶ 34-35.] Plaintiff Nez was indicted for one count of Sale of a Dangerous Drugs and a warrant for his arrest was issued. [*See id.* at ¶¶ 37, 44.]

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Plaintiff Nez was arrested pursuant to the arrest warrant on June 18, 2019 during a mass-arrest operation for the persons indicted in association with Operation Riptide. [*Id.* at ¶¶ 38-40, 44.] Although the arresting officers could not find Plaintiff Nez at the 3935 South Yaqui address they expected him to be at, they did find him at a separate address "a couple of miles" from the Yaqui address." [*See id.* at ¶¶ 40-44.] Plaintiffs allege that the arresting officers confirmed that the warrant was valid after Plaintiff Nez asked if they were sure the warrant was for him. [*See id.* at ¶ 45.] Importantly, Plaintiffs do not make any allegations that the Detective Defendants were involved in Plaintiff Nez's arrest, other than allegedly providing the leader of the arrest team with Plaintiff Nez's expected location on South Yaqui. [*See id.* at ¶ 38-46] Following his arrest, Plaintiff Nez was taken to the jail and booked. [*Id.* at ¶ 47.] Plaintiff Nez had his initial appearance the next morning, during which a bond was set for $15,000. [*Id.* at ¶ 49.] Plaintiff Nez bonded out and was released from custody on June 19, 2019. [*Id.* at ¶ 50.] Following the arrest of a number of the Operation Riptide suspects, FPD issued a press release on June 19, 2019 announcing the indictments for the 44 people arrested during the course of the operation. [*Id.* at ¶ 70.] The press release included a picture of Plaintiff Nez alongside his charge, name, and age. [*Id.*] The press release additionally included

26
27
28

---

² Plaintiffs do not clarify as to whom or in what format the Detective Defendants allegedly claimed that "Plaintiff was positively identified as the dealer through 'multiple databases' and by 'metro officers,'" and further, if this is meant to be a reference to the somewhat-similar information contained within Defendant Eberhardt's police report, as discussed in Paragraph 31 of Plaintiffs' Complaint.

3

a generalized statement that the persons arrested "are linked to the trafficking of methamphetamine, heroin, marijuana, cocaine and acid within the community." [*Id.*]

### C.     The Subsequent FPD Investigation into Plaintiff Nez's Innocence

On June 20, 2019, Defendant Clint had a discussion about Plaintiff Nez with his wife, Defendant Tricia Hill ("Defendant Tricia"). [*Id.* at ¶ 51.] Defendant Tricia happened to be Plaintiff Nez's direct supervisor at Flagstaff Medical Center. [*Id.*] Plaintiffs allege that Plaintiff Nez told Defendant Tricia about his arrest and proclaimed to her that they arrested the wrong person. [*Id.*] Upon hearing this information from his wife, Defendant Clint took initiative to investigate the case further by reviewing the video recordings of the drug deal and comparing images from the video of the suspect to Plaintiff Nez's driver's license photo, and later, a picture from Plaintiff Nez's Facebook account [*See id.* at ¶¶ 52-53.] Outside of the different length of the hair previously observed by the CI, Defendant Clint additionally noticed that the suspect's teeth had an abnormality not seen in Plaintiff Nez's photos. [*See id.* at ¶ 52.] Defendant Clint also noticed that the suspect did not wear glasses, while Plaintiff Nez wore glasses in at least one of his pictures. [*Id.* at ¶ 53.] Defendant Clint then ran an address history for Plaintiff Nez, using a separate database, and discovered that Plaintiff Nez moved away from the 3935 South Yaqui address in 2016. [*Id.* at ¶ 56.] Plaintiffs allege that Defendant Clint also noticed at this time that the phone number listed on the I/LEADS entry for Plaintiff Nez did not match the phone number for "Trey." [*Id.* at ¶ 57.]

After coming across this information, Defendant Clint called Plaintiff Nez and asked to meet with him later that day. [*Id.* at ¶ 58.] At the end of that meeting, Plaintiffs allege that Defendant Clint informed Plaintiff Nez that he believed Plaintiff Nez was innocent. [*Id.* at ¶ 60.] In an effort to clear Plaintiff Nez's name, Defendant Clint reached out to the CCAO to request that the charges be dismissed; CCAO complied and later filed a Motion to Dismiss Plaintiff Nez's criminal charges. [*Id.* at ¶ 61-62.] The correct suspect, Trey Store, was later identified, arrested, and charged for the April 4, 2019 drug deal. [*See id.* at ¶ 63-67.]

On June 26, 2019, just eight days after his arrest, FPD issued a media release publically apologizing to Plaintiff Nez. [*Id.* at ¶ 71.] The release noted that Plaintiff Nez was incorrectly

identified. [*Id.*] The release further made clear that "Tremayne Nez did not sell drugs during Operation Riptide." [*Id.*] On June 28, 2019, FPD issued *another* press release on Facebook to clarify how the mistake was made. [*Id.* at ¶ 73.] In that press release, Flagstaff Police Chief explained that his officers "followed Flagstaff police department policies with regard to their investigations and the use of informants and they acted in good faith" but that a policy review would occur to ensure that nothing like this occurs again the in the future. [*Id.*]

## III.   LAW AND ANALYSIS

### A.   Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, this Court takes "all of the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1025 (9th Cir. 2019). Moreover, under Rule 8(a)(2), a complaint must "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citation omitted). The rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Therefore, complaints that merely "offer 'labels and conclusions'" or "tender[] 'naked assertions' devoid of 'further factual enhancement'" do not suffice. *Id.* (citation omitted).

### B.   Plaintiffs' Complaint fails to state any claim upon which relief may be granted.

#### 1.   Probable cause is an absolute defense to Plaintiff Nez's false arrest claims [Count 1 – 42 U.S.C. § 1983] [Count 6 –State Law].

"The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan,* 443 U.S. 137, 145 (1979). Accordingly, even if a person is later proven innocent, probable cause is an absolute defense to false arrest claims under state common law and federal § 1983 law. *See Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008); *Cullison v. City of Peoria*, 120 Ariz. 165 (1978). As a matter of law, presuming Plaintiffs' allegations are true for this motion only, probable caused existed for Plaintiff Nez's arrest.

##### a.   Independent prosecutorial discretion bars Plaintiffs' Complaint.

As a threshold issue, the decision to file a criminal complaint (or prosecute a case) is

presumed to result from an independent determination by the prosecutor and precludes liability for those who participated in the investigation. *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). The plaintiff bears the burden of alleging sufficient facts to rebut such a presumption (that the prosecutor did not act independently). *Newman v. Cty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). Mere allegations that the Detective Defendants knew the prosecutor would "rely" on their reports are insufficient to overcome this presumption. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994) (holding that conclusory allegations are insufficient to overcome presumption of prosecutorial independence.).

b. The grand jury indictment constitutes *prima facie* evidence of probable cause.

"A grand jury indictment constitutes *prima facie* evidence of probable cause." *West v. City of Mesa*, 128 F. Supp. 3d. 1233, 1245 (D. Ariz. 2015), aff'd, 708 F.App'x 288 (9th Cir. 2017). Probable cause for an arrest "may be satisfied by an indictment returned by a grand jury." *See Kalina v. Fletcher,* 522 U.S. 118, 129 (1997) (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975)); *State v. Coconino Cty. Superior Court, Div. II,* 139 Ariz. 422, 424 (1984) ("In Arizona, indictments are based on probable cause") (citing to A.R.S. § 21-413, 17 A.R.S. Rules of Criminal Procedure, Rule 12.1(d)(4)). For purposes of a state law claim, "the tort of false arrest occurs when a person is unlawfully detained without consent." *Torrez v. Knowlton*, 205 Ariz. 550, 552, ¶ 4 (App. 2003). "A plaintiff establishes a prima facie case by showing that he was arrested by the defendant without a warrant, and the burden then devolves upon the defendant to establish that the arrest was founded upon probable cause. *Reams v. City of Tucson*, 145 Ariz. 340, 343 (App. 1985) (emphasis added).

"A plaintiff can overcome [a grand jury] finding [of probable cause] by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith[,]" *West*, 128 F. Supp. 3d. at 1245 (quoting *Awably v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004)).

Here, Plaintiff Nez's alleges that he was arrested pursuant to a warrant issued after a Grand Jury heard his case. Plaintiffs' Complaint, however, is bereft of any allegations of

1  fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad
2  faith. In fact, Plaintiffs' Complaint alleges the opposite of bad faith. The moment Defendant
3  Clint became aware that the CI's mistake, he expeditiously cleared the arrest. Under no
4  stretch of the imagination can Plaintiffs' Complaint be construed to allege the requisite bad
5  faith elements to overcome the presumption of probable cause.

6          c.    Plaintiffs' allegations regarding the information within the report
                 are irrelevant to Plaintiff Nez's state law false arrest claim.
7
8          "The essential element necessary to constitute either false arrest or false imprisonment
9  is unlawful detention." *Slade v. City of Phoenix,* 112 Ariz. 298, 300 (1975). A detention which
10 occurs pursuant to legal authority, such as a valid warrant, is not an unlawful detention. *Id.*
11 This is the case even when a plaintiff alleges that the defendant officer's writing of a
12 misleading report was the basis for the warrant that preceded his arrest. *See id.* The *Slade* court
13 held that if "the arrest or imprisonment has occurred pursuant to valid legal process, the fact
14 that the action was procured maliciously and without probable cause does not constitute false
15 arrest or false imprisonment." *Id.* (emphasis added). The fact that Plaintiff Nez now claims
16 that the warrant was procured by Defendant Hutchinson's submission of a report that
17 contained "false, misleading and incomplete information" makes no difference for purposes
18 of a common law claim for false arrest/imprisonment under *Slade*.

19         d.    Plaintiffs' Complaint does not attack the validity of the warrant.
20         Absent an attack on the validity of the warrant, a plaintiff cannot succeed on a false
21 arrest claim when an indictment has been issued. *See Baker*, 443 U.S. at 143. To attack the
22 validity of an arrest warrant, a plaintiff is burdened with demonstrating that the officer who
23 applied for the arrest warrant deliberately or recklessly made false statements or omissions
24 that were material to the finding of probable cause. *Smith v. Almada,* 640 F.3d 931, 937 (9th
25 Cir. 2011) (emphasis added). Materiality is a question of law that the Court must resolve. *Id.*
26 In resolving the materiality, the Plaintiffs must demonstrate that a warrant would not have
27 been issued without the false information and with the omitted information restored. *Id.*
28         Here, Plaintiffs' allegations do not present a justiciable attack on the validity of the

warrant. Plaintiffs claim that Defendants Hill, Hutchinson, and Eberhardt did not inform the prosecutor of the suspect identification process and/or that they relied on the CI to visually identify the drug dealer and/or falsely claimed that Plaintiff Nez was identified by multiple databases and officers. [*See* Doc. 1 at ¶ 79.] Plaintiff Nez only alleges that it was Defendant Eberhardt who wrote the report attached to the charging request for purposes of the prosecutor's use in the Grand Jury proceedings. Plaintiff Nez provides no other allegations that Defendants Clint Hill and Hutchinson submitted departmental reports to be utilized within this particular Grand Jury proceeding. Therefore, as Plaintiff Nez does not allege that Defendants Clint Hill and Hutchinson submitted any substantive information to be used in the Grand Jury proceedings, these defendants must be dismissed from this count.

Furthermore, Defendant Eberhardt's alleged recollection of the incident within his police report does not rise to the level of "material omissions" sufficient to invalidate the warrant. *See, e.g., Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir.2009) (false statements about a plaintiff were immaterial to the probable cause finding when a reliable witness described the incident and made an identification of the plaintiff.) In particular, eyewitness identifications which are not impermissibly suggestive or are otherwise unreliable are a proper basis for probable cause to obtain a warrant. *Grant v. City of Long Beach,* 315 F.3d 1081, 1086 (9th Cir. 2002). More importantly, single-photo identifications similar to the identification in contest here have previously been found to be reliable. *See, e.g., Dean v. Fluty*, 231 F. Supp. 3d 513, 523 (C.D. Cal. 2017) (use of single-photo identification by informant sufficiently reliable despite 13 day delay in identification). Given this information, the fact that a single-photograph identification was used when the CI positively identified Plaintiff Nez is immaterial to the actual probable cause finding.

Accordingly, whether Plaintiff's identification transpired through one or more law enforcement database inquiry(s)[3], a detective, or a confidential informant, an identification of

---

[3] There appears to be no legal precedent that would allow this Court to invalidate the arrest warrant because the Plaintiff's identification was not ran through multiple databases before the issuance of the warrant.

Plaintiff Nez was made and therefore, probable cause still existed to arrest Plaintiff Nez because of that identification. Here, if the alleged correct information (a single-photograph identification through an informant) was restored and the alleged incorrect information (that the identification was made through "multiple databases" and "metro officers") was redacted as *Smith* mandates, then the Court would simply have to consider whether probable cause existed in light of knowing that it was a confidential informant who made the identification after sitting next to the suspect for several minutes. *See Garcia v. County of Merced*, 639 F.3d 1206, 1212 (9th Cir. 2011) (even the failure to flesh out an informant's extensive criminal record and present it to the court was not the deliberate falsehood or reckless disregard for the truth needed to invalidate a search warrant). Probable cause undoubtedly exists in light of this information. For this reason, any error as to the source of identification was immaterial.

Finally, the fact that the CI stated "that's him, but he has longer hair now" when identifying Plaintiff Nez is immaterial to the probable cause determination. Notwithstanding that such a statement is not a "conditional" statement at all, as Plaintiff Nez contends, the fact that the CI recognized that the suspect had longer hair does not lend any support to their contention that probable cause did not exist. Indeed, other courts have recognized that a witness's ability to recognize a difference in hair length makes that witness's identification of the suspect <u>more</u> reliable. *See, e.g., United States v. Weiss*, 168 F. Supp. 3d 856, 864 (E.D. Va. 2016). As such, restoring this information shows that probable cause still exists, and therefore, dismissal is appropriate.

e.   <u>Plaintiffs failed to allege that the Detective Defendants<br>participated in the actual arrest of Plaintiff Nez.</u>

Liability under 42 U.S.C. § 1983 ("Section 1983") for false arrest and/or under common law false arrest arises only upon a showing of personal participation and/or personal involvement in the <u>actual arrest</u>, which did not happen here. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Reams v. City of Tucson*, 145 Ariz. 340, 343 (App. 1985) (arrest by defendant required to establish *prima facie* case of false arrest). Plaintiff Nez made no allegations that the Detective Defendants were the officers who arrested him and

Plaintiffs' Complaint does not establish a *prima facie* case of false arrest or false imprisonment under state or federal law.

    2.    **Plaintiff Nez's Section 1983 due process claim [Count 2] fails as he does not have a due process right to the investigation of his choosing or a non-suggestive pre-indictment identification procedure.**

Plaintiff Nez contends that his due process rights were violated by the investigation and identification procedures used by Detective Defendants. There is no constitutional due process right, however, to have an investigation carried out in the manner of one's choosing. *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001). Nor is an officer obligated to continue an investigation after they believe they have collected sufficient evidence that rises to the level of probable cause. *Ewing*, 588 F.3d at 1227 ("Once he has probable cause, an officer is not ordinarily required to continue to investigate or seek further corroboration."); *Adams v. Gililand*, 2017 WL 3215543, at * 4 (D. Ariz. Jul. 28, 2017) (officers under no affirmative duty to continually attempt to negate probable cause once it is acquired).

Further, in terms of Plaintiff Nez's claim regarding the identification procedure itself, the Supreme Court has explicitly stated that "a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest."). *Manson v. Brathwaite*, 432 U.S. 98, 113, n.13 (1977) (holding there was no violation of due process in using single photograph identification); *see also Sejnoha v. City of Bisbee*, 815 F. Supp. 1300, 1303 (D. Ariz. 1993) (holding that single photo identification did not violate due process). In making his due process claims, Plaintiff Nez essentially argues that he had a due process right to a more exhaustive identification process. This goes squarely against the law on the matter.

Even the failure to follow internal policies and procedures cannot amount to the type of due process protected by the Due Process Clause of the Fourteenth Amendment. *Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008); *Barnes v. City of Phoenix*, 2009 WL 3425785, at *3 (D. Ariz. October 22, 2009). At best, Plaintiffs' allegations concerning the identification process utilized by Defendant Clint can be construed as negligence, which does not equate to a due process violation. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We

1  conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official

2  causing unintended loss of or injury to life, liberty, or property.").

3          3.    **An alleged failure to follow policies is insufficient to establish**

4          **liability under *Monell* [Section 1983 claim against Defendant City] for a failure to train or supervise [Count 3].**

5       Plaintiff Nez's Failure to Train or Supervise claim is predicated on the idea that

6  Defendants failed to follow Flagstaff Police Department's policies or procedures regarding

7  identification. However, "the failure of individual employees to follow County policies is

8  insufficient to establish *Monell* liability." *Capp v. County of San Diego*, 2017 WL 1400148, at *7

9  (S.D. Cal. Apr. 19, 2017). As Plaintiff Nez's theory is entirely predicated on a failure to follow

10  FPD policies, his claim fails on this basis alone.

11       Furthermore, Ninth Circuit case law regarding single violations of policy as to a failure

12  to train claim is clear: "Evidence of the failure to train a single officer is insufficient to

13  establish a municipality's deliberate policy." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484

14  (9th Cir. 2007). Plaintiff Nez argues that Defendant Clint carried out the identification in ways

15  that did not comport with FPD policies, and therefore, the Defendant City should be liable

16  for a Failure to Train under Section 1983. Plaintiff Nez's claim is nothing more than a mere

17  allegation that the department failed to train a single officer under *Blankenhorn.*

18          4.    **Plaintiff Nez's Section 1983 claim for a lack of policy under**

19          ***Monell* [Count 4] is premised upon a single incident, and therefore, fails as a matter of law.**

20       Plaintiff Nez's claim is non-cognizable as "[a] *Monell* claim, whether for a municipal

21  policy or for failure to train, generally cannot be premised on a single unconstitutional

22  incident." *Sangraal v. City & County of San Francisco*, 2013 WL 3187384, at *15 (N.D. Cal. June

23  21, 2013); *see also Akey v. Placer County, Cal.*, 2015 WL 1291436, at *9 (E.D. Cal. Mar. 20, 2015)

24  (dismissing a *Monell* lack of policy claim due to a failure to allege more than one incident.).

25       Further, contrary to Count 3 alleging that Detective Defendants failed to follow Policy

26  100, in Count 4, Plaintiffs allege that the Defendant City lacked a policy that mandates

27  additional identification tools in cases where identification is based upon the use of an

28  informant. Even if a *Monell* claim could be entirely predicated on one singular incident –

1  which it cannot – there is no legal precedent holding that the lack of such policy is

2  unconstitutional and/or that failing to use additional identification tools when identification

3  is made by an informant violates a person's constitutional rights.

4              5.      **Plaintiff Nez's Section 1983 ratification claim under *Monell***

5                      **[Count 5] fails as it is premised upon a single incident.**

6       The District Court of Arizona has held that "[t]he ratification theory cannot be so

7  stretched to a situation where, as in this case, 'no policy is at issue, but simply a one-time

8  event that had been completed at the time the complaint was made.'" *Dixon v. Pinal County*,

9  2011 WL 2669245, at *2 (D. Ariz. July 7, 2011).

10       Plaintiff Nez's Ratification theory is based solely on his arrest and the investigation

11  that preceded it. Plaintiff Nez argues that the Chief ratified the actions of the Detectives on

12  the night of the incident by stating on Facebook that his officers "followed Flagstaff police

13  department policies with regard to their investigations and the use of informants and they

14  acted in good faith." Such a ratification theory is exactly what the *Dixon* court determined to

15  be insufficient to establish liability under *Monell* – a theory based upon the one-time event

16  (the investigation of Plaintiff Nez) that was completed at the time the complaint was made.

17              6.      **As the arrest in question was not a "false arrest," Plaintiff Nez's**
                    **instigating false arrest/false imprisonment [Count 7] claim fails**
                    **as a matter of law.**

18

19       The tort of instigating an unlawful arrest typically applies to private citizens, not law

20  enforcement agencies. *See Deadman v. Valley Nat. Bank of Ariz.*, 154 Ariz. 452 (App. 1987).

21  "One who instigates or participates in the unlawful confinement of another is subject to

22  liability to the other for false imprisonment." Restatement (Second) of Torts § 45A (1965); *see*

23  *also Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 201, ¶ 24 (App. 2007)

24  ("Arizona courts look to the Restatement for guidance in the absence of controlling

25  authority."). Instigation of a false arrest <u>cannot be found where the arrest in question was not</u>

26  <u>a false arrest made with legal authority</u>. *See* Restatement (Second) of Torts § 45A (1965) at

27  Cmt. B.

28       As discussed above in the context of Plaintiff Nez's state law false arrest claim, *see*

1    discussion *supra* Section III.B.1.c, an arrest made pursuant to a warrant is not "unlawful,"

2    even when a plaintiff alleges that the underlying warrant was procured with a misleading

3    police report. Further, the arrest of Plaintiff Nez occurred pursuant to lawful authority,

4    thereby precluding his instigating false arrest claim. Accordingly, Count 7 must be dismissed.

5                  7.    **Plaintiff Nez's gross negligence claim [Count 8] fails as a matter**

6                         **of law on multiple bases.**

7                       a.   The conduct alleged does not meet Arizona's high threshold for grossly negligent conduct.

8        In Arizona, a claim for gross negligence must sufficiently allege "[g]ross, willful, or

9    wanton conduct." *Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 23 (App. 2017) (quoting

10    *Armenta v. City of Casa Grande*, 205 Ariz. 367, ¶ 20 (App. 2003)). A party is grossly or wantonly

11    negligent if he acts or fails to act when he knows or has reason to know facts which would

12    lead a reasonable person to realize that his conduct not only creates an unreasonable risk of

13    bodily harm to others but also involves a high probability that substantial harm will result. *See*

14    *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 595 (App. 1991) (citing to *Nichols v. Baker*,

15    101 Ariz. 151, 153 (1966)). The Arizona Supreme Court has previously stated that gross and

16    wanton conduct is "flagrant," "evinces a lawless and destructive spirit," and will make its

17    presence known "in no uncertain terms." *Cullison v. City of Peoria*, 120 Ariz. 165, 169 (1978).

18        Even as alleged by Plaintiff Nez, the conduct surrounding the investigation and

19    identification of Plaintiff Nez does not rise to the level of "gross, willful, or wanton." The

20    Detective Defendants neither had reason to know that their conduct created an unreasonable

21    risk of bodily harm, nor that it involved a high probability that substantial harm would result

22    to Plaintiff Nez in conducting their investigation. The fact that officers allegedly relied upon a

23    CI's identification after that CI had actual face-to-face contact with the suspect was not the

24    type of action that can be categorized as gross and wanton conduct as a matter of law.

25    Similarly, this conduct certainly does not rise to the level of evincing the "lawless and

26    destructive spirit" that is required under *Cullison*. For this reason, the conduct is not grossly

27    negligent as alleged and Count 8 must be dismissed.

28                  b.   Violations of departmental policy do not give rise to a gross

1  negligence claim.

2  Plaintiff Nez theorizes that the Detective Defendants' alleged failure to follow their

3  department's policies concerning identification amounted to gross negligence. This theory

4  fails as a matter of law, as a failure to follow one's own policies does not give rise to general

5  negligence, let alone gross negligence. *Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232

6  Ariz. 598, 603 ¶ 22 (App. 2013) (finding the failure to follow internal procedures is irrelevant

7  because a violation of a self-imposed rule does not create actionable negligence); *Bell v.*

8  *Maricopa Medical Center*, 157 Ariz. 192 (App. 1988) (finding that only a deviation from a

9  standard of care is evidence of negligence and that a deviation from internal protocol and

10  policies is not evidence of negligence.).

11          8.   **Plaintiff Nez's claim for false light defamation [Count 10] fails as press releases regarding publically-accessible criminal**

12                **accusations are not a valid basis for such a claim.**

13  Plaintiff Nez alleges that Defendant City is liable for false light defamation due to

14  FPD's issuance of a media release stating that Plaintiff Nez was charged with a drug offense.

15  That Plaintiff was ultimately deemed innocent does not render the media release a false light

16  invasion of privacy. Specifically, when one has been charged with a criminal offense, the

17  issuance of a news article or press release that simply reflects information available in public

18  records cannot be the basis for a false light claim. *See Sallomi v. Phoenix Newspapers, Inc.*, 160

19  Ariz. 144, 147 (App. 1989) (precluding relief as to false light invasion of privacy claim as a

20  result of the application of the public records privilege); *see also Palmer v. Savona*, 2013 WL

21  4478945, at *10 (D. Ariz. Aug. 21, 2013) (In Arizona, "official court records open to public

22  inspection cannot support an action for invasion of privacy."). Indeed, the United States

23  Supreme Court has said in no lesser terms that "[s]tates may not impose sanctions on the

24  publication of truthful information contained in official court records open to public

25  inspection." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975).

26  Here, Plaintiff Nez's false light claim is entirely predicated off a mere rephrasing of

27  information derived from the information within his indictment, thereby making Arizona's

28  public reporting privilege applicable to his claims. Plaintiff Nez was indicted for the "Sale of

Dangerous Drugs… to wit, lysergic acid diethylamide." *See* Nonsupervening Indictment for Tremayne Nez, attached as **Exhibit A**.; *see also Duncan v. San Dieguito Union High Sch. Dist.*, 2019 WL 4016450, at *2 (S.D. Cal. Aug. 26, 2019) (taking judicial notice of state court records for purposes of motion to dismiss).

The fact that the press release stated that Plaintiff Nez was one of many linked to the "trafficking" of acid amongst other drugs was doing nothing more than summarizing the public records. *See United States v. Farber*, 306 F. Supp. 48, 52 (N.D. Cal. 1969) ("The term 'LSD'… means any form of a drug which chemically contains the substance lysergic acid diethylamide…."); *see also Carrera v. Ayers*, 2008 WL 681842, at *41 (E.D. Cal. Mar. 11, 2008) (providing that "acid" is a synonym for LSD).

Indeed, the United States Supreme Court has previously explained the term trafficking, in common usage, merely means some sort of "commercial dealing." *Lopez v. Gonzales*, 549 U.S. 47, 53, 127 S. Ct. 625, 630 (2006) (additionally providing that Black's Law Dictionary (8th ed.2004) defined "traffic" "as to 'trade or deal in (goods, esp. illicit drugs or other contraband)). As such, the statement that he was linked to trafficking is merely a reiteration of what is in the public records: that he was indicted for the sale of lysergic acid diethylamide. Because the press release simply reflects information available in public records, the public records privilege applies and Defendant City cannot be held liable for false light defamation as a matter of law.

9. **Plaintiff Nez does not have a viable cause of action for defamation [Count 11] as the press release was substantially true given Plaintiff Nez's active indictment at the time of the release.**

To assert a defamation claim, a plaintiff must prove that (1) the defendant made a false statement concerning the plaintiff, (2) the statement was published without privilege to a third party, and (3) the defendant knowingly, recklessly, or negligently disregarded the falsity of the statement. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315 (1997). That the statement in controversy is a substantial truth is an absolute defense to a defamation claim. *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355 (1991). "When the underlying facts are undisputed, the determination of substantial truth is a matter for the court." *Id.* The Arizona

Court of Appeals has previously dismissed defamation claims associated with similar press releases to the case here. *See, e.g., Allen v. Arizona Dept. of Corr.*, 2009 WL 2382026, at *6 (App. Aug. 4, 2009) (dismissing defamation claim involving an attorney general's press release noting that plaintiff was indicted for smuggling drugs into a prison facility and having a relationship with a female inmate.").

Here, the essence of Plaintiff Nez's claim is that the press release stated that he was one of many charged with selling drugs, and that the release further stated that the named persons were "linked to the trafficking of methamphetamine, heroin, marijuana, cocaine and acid within the community." This is a substantial truth in light of the charge that Plaintiff Nez was indicted for at the time. As mentioned in the context of Plaintiff Nez's false light defamation claim, *see* discussion *supra* Section III.B.8, the language within the press release merely rephrases the fact that he was indicted for the sale of LSD. The mere act of Plaintiff Nez being charged with sales of LSD quite literally linked Plaintiff Nez to the trafficking of LSD. That Plaintiff Nez was ultimately found to be innocent does not render the press release defamatory or untrue. Therefore, just as in *Allen*, the Court should dismiss this defamation claim as the statement was substantially true at the time of the release.

> 10. **Plaintiff Nez's common law claim against the City of Flagstaff for** ***respondeat superior*** **[Count 9] fails as a matter of law as no underlying torts have been committed**.

An employer is not liable under a theory of *respondeat superior* if an employee is found to be not liable as to the underlying torts alleged against them. *See Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 327 (1974); *see also Torres v. Kennecott Copper Corp.*, 15 Ariz. App. 272, 274 (1971) (abrogated on other grounds by *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986)). To the extent that Counts 6-8 are dismissed against the Detective Defendants, the City must also be dismissed as a matter of law.

> 11. **Plaintiff Marcella Nez failed to plead sufficient facts for her loss of consortium claim [Count 12].**
>
> > a. <u>As the underlying torts against Plaintiff Nez all fail, Plaintiff Marcella Nez's loss of consortium claim additionally fails.</u>

"[B]ecause loss of consortium is a derivative claim… all elements of the underlying

cause must be proven before the claim can exist." *Barnes v. Outlaw*, 192 Ariz. 283, 286, ¶ 8 (1998); *see also Ochoa v. City of Casa Grande*, 2019 WL 1125316, at *3 (App. Mar. 12, 2019). To the extent her husband's claims are dismissed, Plaintiff Marcella Nez's sole claim of loss of consortium also fails and must be dismissed.

> b.    <u>Plaintiff Marcella Nez failed to plead sufficient facts to plausibly state a claim for relief.</u>

To plead a proper loss of consortium claim, a plaintiff must allege sufficient facts to show damage to the marriage. *See Barnes v. Outlaw*, 192 Ariz. 283, 286, ¶ 10 (1998). A plaintiff must provide "some basis to infer that affection or companionship was actually lost." *Id.* at 286, ¶ 11. Other than "the-defendant-unlawfully-harmed-me accusation," no facts were pled to support the allegations. [Doc. 1 at ¶ 125.] *Iqbal*, 556 U.S. at 678.

**C.    <u>Defendant Tricia Hill must be dismissed from the Complaint.</u>**

Plaintiffs do not direct any of the 12 Counts set forth in Plaintiffs' Complaint at Defendant Tricia. Plaintiffs' theory of liability is incomprehensible under the alleged facts. To the extent they are alleged under a marital community theory, in the area of intentional torts, the community is not liable for one spouse's malicious acts unless it is specifically shown that the other spouse consented to the act or the marital community benefited from it. *Selby v. Savard,* 134 Ariz. 222 (1982). Here, Defendant Tricia told Defendant Clint that they may have arrested the wrong person. Under any theory, Plaintiffs' alleged facts demonstrate her dismissal from this Complaint is appropriate.

**D.    <u>Defendant Hutchinson's presence during the subject drug deal is insufficient to state any claim against him.</u>**

Defendant Hutchinson is merely accused of being present at the April 4, 2019 drug deal, and submitting the charging request with Defendant Eberhardt's report attached. These allegations do not provide sufficient facts to state a claim for which relief can be granted.

## IV.    <u>CONCLUSION</u>

For all of the above-stated reasons, Plaintiffs have failed to state a claim for relief as to any of the alleged counts. As a result, Defendants move this Court to dismiss the Plaintiffs' Complaint in its entirety, including every claim stated therein.

DATED this 2nd day of November 2020.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ Joseph Leverence
Michele Molinario
Joseph E. Leverence
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendants City of Flagstaff,
Clint Hill and Tricia Hill, Colton B.
Hutchinson and Dustin J. Eberhardt

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2020, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Gary Pearlmutter, Esq.
Wendy F. White, Esq.
Southwest Center for Equal Justice
1124 Mountainaire Road
Flagstaff, AZ  86005
Attorneys for Plaintiffs


/s/ Crystal Wong